\*JONATHAN PANCOAST *v.* WILLIAM RUFFIN, SHERIFF, AND [381
THE PRESIDENT, DIRECTORS, AND COMPANY OF
THE BANK OF THE UNITED STATES.

*Banks—Assignees—Payments.*

Where a bank has, *bona fide*, parted with all interest in a debt contracted with
it, the debtor can not pay the assignee in the paper of the bank.

THIS was a bill in chancery, in which the complainant charged
that on the 20th June, 1820, he gave his note to the Bank of Cin-
cinnati, payable in sixty days, upon which note a suit was brought
by the bank, and a judgment recovered. That this judgment was
afterward assigned to the Bank of the United States. That ex-
ecution was sued out upon it and placed in the hands of Sheriff
Ruffin to be executed. That complainant offered and tendered to
said sheriff the amount of the debt and interest in the notes of the
Bank of Cincinnati, which, at the request of the Bank of the
United States, he refused to receive, and was about to proceed to
levy the execution upon the complainant's property, by the sale
of which he would be greatly injured. It further stated that the
notes of the Bank of Cincinnati were brought into court with the
bill, and prayed an injunction, which was allowed.

To the bill the defendants demurred generally, and the decision
upon the demurrer was adjourned from the supreme court of
Hamilton county to this court.

ESTE, in support of the demurrer:

The defendants insist that the sheriff is not bound to receive
the paper in discharge of the execution.

The statutory provision relied upon is in the following words:
" Provided always, that in all suits or actions prosecuted by a
bank or banker, or persons claiming as their assignees, or under
them in any way for their use or benefit, the sheriff, upon execu-
tion in his hands, in favor of such bank or banker, their or
his assignee as aforesaid, shall receive the note or notes of such
bank or banker from the defendant in discharge of the judgment;
and if such bank or banker, their or his assignee or other persons

391

suing in trust for the use of such bank or banker, shall refuse to receive such notes from the sheriff; the sheriff shall not be liable to any proceedings whatever, at the suit or upon the complaint of the bank or banker, their or his assignee as aforesaid."

382] *It is clear that the privilege of the debtor to pay in the paper of the bank or banker exists in all cases where the suit is brought for the use of the bank or banker. The question is whether it exists in the case of a *bona fide* assignee of a note or judgment.

The following reading of the proviso is submitted as the just and correct one:

In all suits prosecuted by a bank or banker for their own use and benefit, or by persons claiming as their assignees for the use or benefit of the bank or banker, or by persons claiming under such bank or banker in any way for the use or benefit of such bank or banker, the sheriff shall receive the notes of the bank or banker. The words *them* and *their* throughout the proviso, although not grammatically correct, certainly refer, wherever either is used, to bank or banker. All suits brought for *their benefit*, unquestionably means for the benefit of the bank or banker. This is confirmed by the latter clause of the provision: "That such bank or banker, or other persons suing in trust for *the use of such bank or banker*," not for the use of such assignee or assignees. If this construction be correct, it was the intention of the legislature not to extend the privilege of paying in the paper of the bank to any case where the suit was not prosecuted for the use of the bank, whether in the name of the bank itself or by an assignee.

HAMMOND, for the complainant:

The statute under consideration provides for three distinct classes of cases:

1. Where a bank or banker is plaintiff without any regard to the use for which the money is to be recovered.

2. Where the assignee of a bank or banker is plaintiff, no matter for what use the suit is brought.

3. Where any person sues claiming under a bank or banker, in any way for their use or benefit.

The interpretation set up by the defendants confounds all those separate classes of cases, and requires the statute to be read, as if

every member of the sentence was connected by a conjunction. The reading is this: All suits or actions prosecuted by a bank or banker in any way for their benefit, and in all suits or actions prosecuted by any *persons claiming as their assignees, for [383 their benefit, and in all suits or actions prosecuted by any persons claiming under them in any way for their benefit. This reading is at variance with the terms used, and the natural construction of the words. It attaches a qualification to the whole, which is unreasonable and absurd.

When the bank sues, and is the plaintiff upon the record, the defendant is not to be put to proof that the suit is for their own benefit. The absolute right is in them, and that is sufficient. If by suggesting a use or benefit in another, the statute could be evaded, and its provisions rendered inoperative, its enactment would have been worse than idle. The legislature have used plain terms—wherever the bank is the plaintiff, there it shall receive its own notes in payment.

This provision might have been evaded by the bank assigning its notes to others, and to prevent this the act attaches the same consequence to a suit prosecuted by an assignee. When an assignee is plaintiff on the record the right is in him absolutely, and if he claim in this character of assignee then the statute also attaches.

The full object of the legislature was not affected by this provision. It was conceived that banks and bankers might contrive some method of suing where neither themselves nor their assignees would be plaintiffs on the record. To meet all such cases, whatever disguise they might assume, the third provision is made, and the law is extended to all suits prosecuted by persons claiming under banks or bankers in any way for their benefit. Every possible form of suing is thus provided for. And to every possible form of suing it is contended that the legislature meant to extend the law.

The circumstances of the country, upon which this law was intended to operate, must be taken into consideration in determining its true meaning. Banks and bankers had been for some time driving a trade in credits. They exchanged their own notes, containing a promise to pay money on demand, for the notes of others promising to pay money at a day certain. At the time of exchange, the bank or banker did not intend to pay money for his

note on demand.   Nor was it expected that the other party would
**384]** take up \*his note when due, by the payment of money.   The
notes of banks and bankers were scattered over the country, and
in consequence of disregarding the engagement on their face, to
pay them when demanded, they greatly depreciated.   The indi-
vidual notes given for them were retained by the bankers, and
preserved their nominal value.   In this state of things to permit
the banker to enforce payment, and reject or refuse to receive his
own notes, would be holding out an inducement to him to increase
the discredit of his paper, that he might purchase it up for a
trifle, and make a clear speculation of the difference between
the amount at which he issued it and the amount at which he
redeemed it.   It was just that he should receive his own paper
in payment, and it was the policy of the legislature to make
these floating credits liquidate each other.   This could only be
done by closing the door against all contrivances to convert the
one into money, and leave the other afloat.   Were the law ambigu-
ous, it would be the duty of the court to favor the interpretation
that would effect its object; but when the most obvious sense of
the terms requires that they should be thus understood, it would vio-
late all sound rules of construction to seek for a different meaning.

A strange notion has of late possessed some very able jurists,
that the remedy enters into, and is of the essence of the contract,
so that any legislative variation of the remedy which tends to de-
lay the party plaintiff from enforcing his judgment, impairs the
obligation of the contract, and is, therefore, in our government, in-
operative.   It is not necessary here to combat this fallacy.   The
act which we seek to enforce took effect on the 1st June, 1820,
and the bill charges that the contract was made on the 20th of
that month.   It is, therefore, the law that provided the remedy
when the contract was made, and the case can not be affected by
the principle referred to.

By the COURT:

This case, and that of McDougal and others v. Holmes and
others, depend upon the same principle—the just construction of
the "act to regulate judicial proceedings where banks and bankers
are parties," etc.

**385]**   \*The first seven sections of the act are employed in making
provisions to enable those who are creditors of banks or bankers

to secure their claim. For this purpose such creditors are authorized to attach the debts due to the bank or banker in the hands of their debtors, and thus secure the credits of the institution for the liquidation of its debts.

The eighth section relates to proceedings between the banks and their debtors. Its first enactment gives to the bank or banker a more simple method of. suing for its debts secured by indorsement; the proviso or latter clause of the section secures to the debtors of the bank or banker, *in certain cases*, the privilege of paying the debts they owe to a bank or banker in the bank paper issued by the institution with which the debt was contracted. This privilege extends only to a case where the suit is prosecuted against the debtor, in *any way for the use and benefit of the bank or banker*. It can not consistently with the other parts of the statute be extended further; for if the construction contended for by the complainants were adopted, all the beneficial effects of the previous sections would be defeated by the eighth. The creditor of the bank, after he had been at the trouble and expense of prosecuting his attachment, and obtaining judgment against the debtor to the bank, and when he hopes that he is about to receive the fruits of his trouble and expense, is paid off with the paper of the same bank, and finds himself, after all his pains and losses, just where he started.

Statutes should be so construed as to give effect to the intention of the legislature, and, if possible, render every section and clause effectually operative. In this act the intention of the legislature is manifest; it is to aid both the creditors and debtors to banks.

It can not be rationally supposed that it was intended to hold out encouragement to claimants to prosecute for their claims under the provisions of this act, and then mock them and disappoint their just expectations. Such trifling ought not, and can not, be imputed to the legislature.

The terms in the eighth section to which the parties give a different and directly opposite construction are these: " *That in all suits or actions prosecuted by a bank or banker, or persons claiming as their assignees, or under them in any way for their use and benefit.*" The complainants insist that the disjunctive *conjunction or [386 separates the sentence so as to form three distinct classes of cases, in which the rights of paying in the paper of the bank is secured;

so that an assignee is obliged to receive the paper although the bank has no interest in the debt assigned.

This construction is founded upon a mere grammatical criticism, which is never received to change or control the intention of the legislature, where that intention is otherwise clearly expressed. Something may depend upon the punctuation in the statute book, which may be incorrect, and ought never to vary the true sense. Leave out the comma after the word " *assignees,*" and the plain construction is, that the after words "*for their use or benefit,*" apply to each preceeding clause of the sentence. This is believed to be the correct interpretation, either with, or without the comma, and perfectly consistent with the reason, the justice, and the spirit of the act. When, therefore, the debt has been *bona fide* assigned, and the bank has no interest left in it, the assignee is not bound to receive the notes of the bank in discharge of it.

Bills dismissed with costs.

Judge BURNET dissented.