## Northampton Bank *against* Balliet.

Payment into court or tender in notes of a bank, as between the bank itself and its debtors, is equivalent to payment in specie.

If the obligor of a bond to a bank holds the notes of the bank at the time he receives notice of the assignment of the bond, the assignee is bound to receive them as cash in payment of it; but if he obtained them after notice, they would be no defence either as payment or set-off in a suit on the bond by the assignee in the name of the bank.

In such suit, evidence of transactions between the defendant and the bank is admissible for the defendant, where such transactions commenced before he received notice of the assignment, though the liability of the bank was not complete at the time of such notice.

Evidence that the defendant in the suit was a man of business and in the habit of taking notes of that bank, is no proof of the time when the defendant received the notes set up as a defence.

ERROR to the Common Pleas of *Lehigh* county.

This was an action of debt brought by the Northampton Bank for the use of John Swander, against Stephen Balliet, Jun., who was impleaded with Jacob Huntzinger (who was not summoned), on a bond given by the defendants to the bank, dated in January 1840, in the penalty of $1000 conditioned for the payment of $500 on the 1st April 1843, with interest from the 1st April 1840. The defendant pleaded payment and tender.

The plaintiff, after giving in evidence the bond in suit, gave in evidence the following assignment endorsed on said bond:

The Northampton Bank hereby assigns and sets over unto John Swander, of North Whitehall township, Lehigh county, all the said bank's right, title and interest, to the within bond, and all moneys due, and to become due thereon, to secure to the said John Swander, his heirs, executors, administrators and assigns, the payment of a certain certificate of deposit bearing even date herewith for the sum of $2000 with interest, on the 1st day of April 1843.

Witness, the corporate seal, and the signature of the president and cashier of said bank, this 5th day of April 1842.

JOHN RICE, President. [SEAL.]

GEORGE KECK, Cashier.

Also the following certificate of deposit:

$2000                    *Northampton Bank, April* 5, 1842.

This is to certify that John Swander deposited this day to his own credit $2000, payable on the 1st day of April 1843 with interest, on his check and a re-assignment of certain bonds this day assigned to him, to wit—

[Northampton Bank v. Balliet.]

| | | | |
|---|---|---|---|
| Bond, Paul Balliet, | - - - | $784—due April 1, 1843. |
| Bond, Paul Balliet, | - - - | $250—due April 1, 1843. |
| Bond, Stephen Balliet, and Jacob Huntzinger, | - | $500—due April 1, 1843. |
| And bond, Joseph Gross, | - | $500—due April 1, 1844. |

$2034

GEORGE KECK, Cashier.

The defendant called George Keck, who testified that on the 23d January 1843, Stephen Balliet paid him $500 on a bond due April 1st 1844, which he returned to Balliet after making an endorsement on it. This was the first time he recollected notice having been given to Balliet of the assignment of the bond in suit.

The defendant proposed to prove further by the witness an agreement between the witness and defendant in relation to the bond in suit, to which evidence the plaintiff objected, but the court admitted the evidence, and sealed an exception.

The witness testified as follows :—" It was agreed that the payment made on the bond of 1844 should be applied to the bond of 1843, if the bank could get it. He wanted to pay the first bond, and I told him it had been assigned to Swander. I told him I had the bond of 1844, and he agreed to pay that and did pay it, with the understanding, that as soon as the bank could get the Swander bond back, he should have it."

The defendant then proposed to examine the witness in relation to certain drafts drawn by the Northampton Bank on the Western Bank of Philadelphia, in favour of said defendant, for $325, to the admission of which, and of all evidence relating thereto, the plaintiff objected; but the court admitted the evidence, and sealed an exception.

The witness then testified as follows :—" This draft by Northampton Bank on the Western Bank of Philadelphia in favour of Stephen Balliet, Jun. for $100, dated October 26th 1842, was drawn when it bears date. Stephen Balliet, Jun. deposited the amount in bank, and took this draft which is still unpaid : the money is yet in bank for this draft. On the same day that this draft was given, there were other drafts given to Mr Balliet, to the amount of $1300 or $1600 ; $325 remained unpaid. On the 7th March 1843, John Balliet came to the bank with one of those drafts, and then John Rice, president of the bank, gave to Mr Balliet two drafts on Slemmer and Rogers, one for $125, and the other for $100, amounting to $225. These were given in place of the draft on Western Bank for $225. The difference of $100 was paid to Balliet, and made up the $325."

The witness then counted certain notes of the Northampton Bank, amounting to $555.

The defendant proposed to examine the witness in relation to a

[Northampton Bank v. Balliet.]

certain draft of October 26th 1842 on Western Bank of Philadelphia for $410; also a draft or acceptance by Slemmer and Rogers for $1000; also to certain Western Bank drafts held by Waterman and Young; all which evidence was objected to by the plaintiff; but the evidence was admitted by the court, and the plaintiff excepted.

The witness then testified as follows:—"One of these drafts of October 26th 1842 for $410 on the Western Bank is in the hands of Waterman and Young, to whom Mr Balliet passed it at the time it was given. Mr Rice placed in the hands of Waterman and Young one draft or acceptance for $1000 by Slemm and Rogers, drawn by John D. George; that is not paid; another for $200 is paid. Waterman & Young hold western drafts amounting to $1175. These acceptances of Slemm & Rogers will be paid by the coal assignees. These acceptances of Slemm & Rogers were sent to Waterman & Young, to meet drafts held by them. One of these drafts is Balliet's draft for $410. As I remarked, Balliet came there to pay Swander's bond, and I told him it had been assigned to Swander, and he paid the bond of 1844, and I was to deliver up bond of 1843, if the bank afterwards got it.

Cross-examined. — In all these draft transactions no allusion was made to Swander's bond. These drafts were given to Balliet on notes that he brought there; he got them to pay off debts which he owed to merchants in Philadelphia, and they were paid, except the one mentioned."

The defendant thereupon offered to prove by a witness that the defendant was a man of business, and in the habit of taking Northampton Bank money; to which evidence the plaintiff objected, but the court admitted the evidence and sealed an exception.

The witness then testified that Stephen Balliet was, in the fall of 1842, in the habit of taking Northampton Bank money, and was in a large business.

The court charged the jury as follows:

The plaintiff has given in evidence the defendants' bond to the bank, dated January 1840, and payable on the 1st April 1843, interest to be paid annually. This bond was assigned to Swander on the 5th April 1842. Notice of the assignment was not given until the 23d of January 1843. Balliet then came to pay this bond, and was told it had been assigned. He then paid the money on another bond, on condition that it was to be applied to this, if the bank could get it back from Swander. It was not got up, so that this payment of the bond due in 1844 stands good, and this money as payment forms no defence to this action.

The defendant has given in evidence other indebtedness by the bank to him or to Balliet before notice of the assignment. Is this a good defence to the bond? An assignment operates as a new contract. This contract between the debtor and assignee commences upon notice of the assignment. The assignee takes the bond subject

[Northampton Bank *v.* Balliet.]

to every defalcation existing between the obligor and obligee at the time notice is given of the assignment.

It is said by plaintiff that this indebtedness of the bank to Balliet is set-off and not payment, and therefore it is no defence to his action. Bank notes are something more than mere promissory notes. They are, to some considerable degree, money. They pass as money. If stolen and passed off for value, they cannot be followed and reclaimed as chattels or mere choses in action can. The bank could not now plead the statute to one of its notes. Until Balliet had notice of the assignment, he might well give credit to the bank on faith of the bond. This transaction is directly between the bank and Balliet. It is not the buying up of outstanding debts against the bank. The dealings were directly between them, and all the indebtedness that existed in favour of Balliet by the bank would be a good defence in this action. Balliet had a right to prepare to pay the bank the debt he owed. It was his duty to do so. If he got the money of the bank in claims against it, he was not to lose all this because the bank had made an assignment of which he had no notice, and which both the bank and assignee had kept secret. This is not the law, because it would be the most gross injustice.

The plaintiff has asked us to charge you " that the plaintiff, Swander, is entitled to recover in this issue, notwithstanding all the evidence given on the part of the defendant, because the defendant did not pay the bond in suit to the bank, but paid another bond which he owed to the bank, and which fell due in 1844; and because the evidence of defendant as to transactions between defendant and bank after the assignment of bond in suit to Swander are not available to defendant if offered by way of set-off, and are clearly no payment either to the bank or John Swander, who then held the bond."

The answer which we give to all this is, that the money which was paid on the bond that fell due in 1844 is no defence to this action, but that any other legal claims which the defendant held against the bank at the time of notice of the assignment to Balliet, and which he now holds, and which he has proved, are a good defence to this action. Whether any have been proved is for you to decide. If any such have been proved, you will determine their amount, and credit the same on the bonds. If the bond is thus paid in full, you will find for the defendant. If it has not been paid in full, you will find for the plaintiff to the amount of the unpaid balance, with interest. We have also been asked to charge you that " notice of the assignment is immaterial." We refuse so to charge you.

The jury found a verdict for the defendant.

Errors assigned :

1. The court erred in admitting the evidence embraced in the bills of exception.

[Northampton Bank v. Balliet.]

2. In charging, substantially, that the indebtedness of the bank to defendant, given in evidence, was payment, and not set-off.

3. In what they say with regard to bank notes.

4. In charging that " the dealings were directly between the bank and Balliet, and all the indebtedness that existed in favour of Balliet by the bank would be a good defence in this action."

5. In the answer to plaintiff's points.

6. In not answering the first point fully.

7. In not distinguishing between the drafts of October 26th, 1842, and those of 7th March 1843, the former having been either paid off or not in defendant's hands at the time of trial, and consequently not in evidence, and the latter having been given after notice of assignment, and thus misleading the jury, who could not otherwise have found for defendant.

*C. Davis* and *Mallery,* for the plaintiff in error, referred to *Depeau* v. *Waddington* (6 *Whart.* 233); *Petrie* v. *Clark* (11 *Serg. & R.* 388); Act of 28th May 1715 (*Purd.* (1841) 136; *Hinkley* v. *Walters* (8 *Watts* 260), S. C. (9 *Watts* 183); *Carmalt* v. *Post* (8 *Watts* 406), S. C. (2 *Watts & Serg.* 70); *Filbert* v. *Hawk* (8 *Watts* 443); *Uhler* v. *Metzgar* (2 *Rawle* 239); *Ramsey's Appeal* (2 *Watts* 228); *Huling* v. *Hugg* (1 *Watts & Serg.* 210).

*Gibons* and *King,* contra.

The opinion of the Court was delivered by

Rogers, J.—This was an action of debt to recover the amount due on a bond given by the defendants to the Northampton Bank, in the penalty of $1000, conditioned to pay $500 with interest on the 1st day of April 1843. The defendants plead payment and tender : replications and issues. The suit is brought for the use of John Swander, to whom the bond was assigned on the 5th of April 1842. But the defendants received no notice of the assignment until the 23d January 1843. The case may be viewed in two aspects : first, as between the Northampton Bank and the defendants ; and next, between the assignee and the defendants.

By the Act of defalcation it is enacted, that it shall be lawful for the defendant to plead payment, and give any bond, bill, receipt, account or bargain in evidence. In this State, therefore, in a suit on a bond, the plea of payment is not viewed merely as a common law plea, in which only direct evidence of payment is admissible ; but upon notice, according to the rules of court, the defendant may avail himself of set-off, or any equitable defence he may have against the plaintiff's claim. But granting that it is a common law plea, the question arises, in the first place, whether payment into court, or a tender in the notes of the bank, between the bank itself and its debtors, is equivalent to payment or tender in specie. In other words, has the bank a right to insist on gold

[Northampton Bank v. Balliet.]

and silver from its debtors, when they are willing and offer to discharge their obligations in notes issued by the institution itself?

In this State, although it is conceded to be different in Massachusetts and New Jersey (13 *Mass.* 235; 3 *Halsted* 172), the doctrine asserted by counsel has the merit of novelty; for the benefit of this principle, so far as my knowledge extends, has never been claimed by the banks, nor has it ever been supposed to exist by the public. If the law be as has been contended, it is time it should be known, as the citizens of this State have been labouring under a dangerous delusion; for it is notorious that the notes of insolvent banks have commanded a ready sale in market, for the simple reason that they can be used in payment of debts due the bank. This is the common understanding among the men of business throughout the State; and it would shock their ideas of common sense and common honesty, if they should now be told that it was not a matter of right, but depended entirely on the will of the institution (whether solvent or insolvent), who were at liberty to receive them or not, as they might think proper. Nor can the bank complain of injustice, if the law be adverse to this pretension, as it is of no consequence to them what price their debtors pay for their notes, whether par or their depreciated value, as the bank can lose nothing by the transaction.

The argument is, that notes are not money, and that it is in opposition to that clause in the Constitution of the *United* States which prohibits the several States from making anything but gold and silver coin a legal tender in payment of debts. If the Legislature should so far forget their duty as to undertake to make bank notes or bills issued by themselves a legal tender generally, in payment of debts to third persons or to other institutions, the objection would be unanswerable; but between the bank itself, which is the creature of the Legislature, there is nothing in the Constitution to restrain their power to impose terms, whether directly or by necessary implication; nor is there anything to prevent them from imposing terms on themselves. Besides, in the case of a solvent bank, such a privilege would be unavailing; as all it would be necessary to do would be, when the bank refused to receive its notes as payment, to demand the specie for the notes, and then pay their debt in gold and silver drawn from their own vaults. It must be conceded that no part of the Constitution can be so construed as to prevent either individuals or banks from making their own contracts, and agreeing to receive payment either in notes issued by themselves or in any other manner they may stipulate for. This, in truth, is in the ordinary course of business, as, for example, contracting to pay in current notes or some marketable commodity; and no person ever supposed it was an infringement of the Constitution to compel the contracting parties to perform their agreement.

These are cases of express contracts, it is true, but implied con-

tracts create the same obligation and come within the same category. Of the latter description is this case. A bank is an incorporated institution, with peculiar privileges; among others, to issue or loan their own notes, which, in the common transactions of business, answer, and are so intended by the bank, all the purposes of money. They pass by delivery; and even when stolen, and transferred in the course of business, unlike choses in action or other property, they cannot be recovered from a *bonâ fide* holder. In *Race* v. *Miller*, where the principle was first decided, Lord MANSFIELD says, " They are not goods, nor securities, nor documents for debts, but are treated as money, as cash, in the ordinary course and transactions of business, by the general consent of mankind, which gives them the credit and currency of money to all intents and purposes; they are as much money as guineas themselves are, or any other coin that is used in common payment as money or cash." The same principles are recognised in *Bayard* v. *Shunk* (1 *Watts & Serg.* 92), where the whole matter is carefully examined by Chief Justice GIBSON, who delivered the opinion of the court.

If these principles be correct—and they cannot be contested, either on reason or authority—how can the bank, which has issued and passed them as cash, refuse in good faith to receive them as cash? They, at least, are estopped from denying they are cash, when offered in payment by their debtors. From the very nature of the transaction, there is an implied contract with them and the holders, that they will treat them, to all intents and purposes, as money. To adopt the language of Lord MANSFIELD, they are as much money as guineas themselves are, or any other coin that is used in common payment as money or cash. Having given them currency as money or cash, they shall not be at liberty afterwards to dispute it. It is cash so far as they are concerned, if to none others, and this upon the plainest principles of equity and justice. The furthest the banks in this State have ever ventured to go, was a denial by the branch bank to receive the notes of the parent bank, and the assignees of the United States Bank to receive the notes of the bank, which had depreciated in value, in payment of debts, which was promptly remedied by the Act of the 11th March and the 20th section of the Act of the 1st May 1841. In passing those remedial Acts, it was taken for granted that they would have no right to refuse to receive their own notes. If this case, therefore, rested between the Northampton Bank and the defendant, the payment into court would be a good payment, without regard to the time when they were procured by the defendants. There is a marked difference between such a case and a defence grounded on a set-off. But as the bond has been assigned, we must next consider the effect of the assignment.

The case would seem to be this. John Swander, the assignee for whose use the suit is brought, was the holder of notes of the

Northampton Bank to the amount of $2000. This money he loaned to the bank, taking as a collateral security several bonds, of which the bond in suit was one. The bonds were assigned on the 5th April 1842, but the defendants had no notice of the assignment until the 23d January 1843.

Although the agreement between Swander and the bank says but little for the solvency of that institution, yet we can perceive nothing in that contract that places Swander in a worse situation than any other assignees either from banks or individuals. · It must be governed by the same rules which apply to assignments under the Act of the Legislature. The bond is payable to the bank or its assigns ; it therefore goes into the hands of the assignee with all the incidents attached to other assignments of choses in action. From this it follows that after assignment of the bond and notice of it, no set-off afterwards accruing can avail the defendant ; nor is the assignee bound to receive the notes of the bank in payment. In that particular the assignee stands in a different situation from the assignors. For although as between the defendants and the bank the notes may be treated as cash, yet between them and the assignee they cease to be such, and must be viewed in the ordinary light of a set-off merely. If, therefore, the defendant held the notes of the bank at the time he received notice of the assignment, the assignee would be bound to receive them as cash. But if afterwards, the assignee cannot be compelled to receive them, nor is there any defence against the plaintiff's demand either as payment or set-off. The important period to determine the rights of the assignee and the defendants is not the time of the assignment, but the time the defendants had notice of it, and this principle applies as well in the case of set-off as payment. The time the contract begins between the assignee and the obligor is when the latter has notice of the assignment. It is the duty of the assignee or the obligee to inform the obligor that he has parted with the bond, and if this is omitted they are in default, and not the obligor, who, until he is informed otherwise, has a right to suppose that the bond is still the property of the obligee, and to act and contract with the obligee or others under that reasonable supposition. These principles were first ruled in *Wheeler, assignee of Baynton* v. *Hughes,* (1 *Dall.* 23). The assignee takes the bond at his own peril, and stands in the same place as the obligee, so as to let in every defalcation which the obligor had against the obligee at the time of the assignment or *notice of the assignment.* This was the case of set-off, and has been repeatedly recognised since in cases cited at the bar. It is supposed, however, that all the earlier cases have been overruled in *Hinkley* v. *Walters,* (8 *Watts* 260), and same case, (9 *Watts* 183). A distinction has, it is said, been taken between payment and set-off; and to this effect, it must be confessed, is the reasoning of the learned Judge who delivered the opinion of the court. The court, however, never did

[Northampton Bank v. Balliet.]

intend to overrule the earlier cases on this subject, none of which, be it remarked, would seem to have been cited either in the argument or in the opinion of the Judge. It must be observed that this point was not necessary to the decision, which turned on the Act of Limitations as applicable under special circumstances to a plea of set-off, grounded on an erroneous and mistaken principle said to be ruled by this court, that the statute of defalcation or set-off *per se* applies the demand of one party to that of the other, so as to produce payment, satisfaction or extinguishment.

As this case goes down for another trial, I will now briefly notice the bills of exception. If the agreement proved by the witness contained in the first bill had been followed up with proof that the bank had obtained a re-assignment of the bond, it would be pertinent evidence. But this the defendant failed to do; it was therefore immaterial to the issue and improperly received. Of this the court were aware, and in the charge corrected the error by instructing the jury that it was no defence to the bond. For such an error I should be very reluctant to reverse the judgment, unless there was something in the case which induced a suspicion that it may have had an improper influence on the minds of the jury.

The court was right in admitting the evidence in the second bill, because although the liability of the bank was not complete when the defendant had notice of the assignment, yet the transaction out of which the defence arises commenced before he was informed of the transfer of the bond.

As the time when the notes were received by the defendants may be very material, it is necessary for the defence to give proof of it. And for this purpose we cannot perceive that the fact that one of the debtors was a man of business and in the habit of taking Northampton Bank notes is any proof whatever.

On the whole case, we think the judgment should be reversed, and a *venire de novo* awarded.

Judgment reversed, and a *venire de novo* awarded.