## THE EXCHANGE BANK OF COLUMBIA AND C. H. BALDWIN *vs.* WILLIAM TIDDY and R. H. DAVIDSON.

The dissolution of a banking corporation, with no provision of law for collecting its debts, deprives it of the power to do so; but *it was held*, that an act of the Legislature of South Carolina, passed since the war to enable its banks to renew their business, or to place them in liquidation; and a decree of a Court in that State declaring a certain bank to be insolvent, and putting it in liquidation, did not dissolve the corporation, but continued its existence for the purpose of collecting its debts and winding up its affairs.

*It appears* that under the C. C. P., sec. 299, which allows an appeal to the Supreme Court from an order of the Superior Court, granting or refusing a new trial, the Supreme Court may grant a new trial because of the refusal of the continuance of his case to a party by the Superior Court, where in law he was entitled to it, or where the refusal was manifestly unjust and oppressive, and merits were shown.

The act of 1869–'70, ch. 4, which authorizes the defendants in judgments obtained by banks chartered by this State upon a note given to, or a contract made with a bank or its officers, to pay and satisfy the same with the bills of such bank, is constitutional, and construed with the act of 1868, ch. 47, and 1868–'69, ch. 77, *in pari materia*, applies as well to foreign as to domestic banks.

[*Fox* v. *Horah*, 1 Ired. Eq. 358,  *Mann* v. *Blount*, 65 N. C. Rep. 99, and *Bank of Charlotte* v. *Hart*, at present term, cited and approved.]

CIVIL ACTION, tried before *Henry, J.*, at a Special Term of the Superior Court of MECKLENBURG County, held in January 1872.

The action was commenced in April, 1869, in the name of the Exchange Bank of Columbia, a corporation created by a statute of South Carolina prior to the year 1868, and it sought to recover from the defendant the amount of a note stated in the complaint.

Shortly before the adjournment of the Court, on the last day set for the trial of issues of fact, this case was called for trial. The defendants' counsel stated to the Court that the case had

been reached unexpectly, by the laying over of a large number of cases on account of the sickness of a member of the bar, and as his client, William Tiddy, an old and infirm man, was detained from Court by the inclemency of the weather and by the belief that his case could not be reached, he was not ready for trial, and desired a continuance of it until the following Monday, or some other day of the term. The Court denied the application, and ordered that the trial proceed. The counsel for the plaintiffs then exhibited to the Court a long exemplification of a record from South Carolina, showing that the Exchange Bank had gone into liquidation about the 1st December, 1869, and that C. H. Baldwin had been duly ap pointed receiver of its effects and assets, and moved the Court that the said C. H. Baldwin be made a party plaintiff with the Exchange Bank, and showed that a notice of the motion had been given to the defendants at July Term 1871. The motion was opposed by the counsel for the defendants on the ground, that as early as Spring Term 1870 of the Court, the dissolution of the bank, as a corporation, had been suggested on the record. The plaintiff's motion was granted, and C. H. Baldwin was made a party plaintiff with the bank.

The defendants' counsel then insisted that such an amend-ment in a substantial matter operated as a continuance; but the Court ruled otherwise, and ordered the trial to proceed.

The plaintiffs' counsel then read the note and endorsements, and there being no evidence on the part of the defendants, the plaintiffs, under the charge of his Honor, had a verdict for a sum ascertained by the legislative scale applied to the note, which was dated in April 1864.

The counsel for the defendants then moved for a new trial upon an affidavit, which stated, in effect, that when the case was called for trial he was absent, for the reason that his counsel had informed him that his case could not be reached that day, and also because of his feeble health and the inclemency of the weather; that owing to his absence he had been unable to ob-

tain the benefit of the plea, as a set-off, of the bank bills of the Exchange Bank which he then held, and still holds, to a larger amount than the debt due the plaintiffs.

The motion for a new trial was disallowed and a judgment rendered on the verdict.

The defendants' counsel then moved for and obtained a rule upon the plaintiffs to show cause why they should not accept the bills of the Exchange Bank of Columbia in payment of the debt, and have satisfaction of the judgment, excepting the costs of the action, entered of record.

The plaintiffs' counsel, admitting that the defendants held the bills of the bank, showed for cause against the rule, that the Exchange Bank of Columbia was not a bank chartered by this State, but by the State of South Carolina, and that the present action did not come within the provisions of our statutes relating to the set-off of bank bills to debts due by banks, and actions brought by them or by any assignee, or endorsee, or receiver, or officer of such corporations seeking to recover such debts.

His Honor being of opinion that the defendants were not entitled to the benefit of the said statutes, which related only to domestic, and not to foreign banks, dismissed the rule, and the defendants thereupon appealed from the judgment rendered for the plaintiffs.

*Jones & Johnston,* for the plaintiffs.
*Guion* and *J. H. Wilson,* for the defendants.

RODMAN, J. The points made by the defendant before the rendition of judgment against him need be noticed only briefly.

1. If the plaintiff corporation has been dissolved and there is no provision of law by which the debts owing to it can be collected, of course the plaintiff must fail. *Fox* v. *Horah,* 1 Ire. Eq. 358. But we think that is not the result of the Act of the Legislature of South Carolina to which we were referred,

or of the action of the Circuit Court of that State. The corporation has been declared insolvent and put in liquidation; to some extent the exercise of its corporate privileges has been prohibited; but the interest and object of the whole proceeding is to keep it alive until its assets have been collected and distributed under the superintendence of the Court.

2. The C. C. P., Sec. 299, allows an appeal to this Court from an order of the Superior Court granting or refusing a new trial, and if it appeared that a continuance had been refused to a party when, in law, he was entitled to it, or when the refusal was manifestly unjust and oppressive, and merits were shown, perhaps this Court might grant grant a new trial on that ground. But neither of those was the case here. The junction of Baldwin's name with the Bank as plaintiff was no surprise to the defendant, for notice of an intention to do so had been given at a previous term. The amendment did not in any way alter the defense; or require or permit any change in the pleading. No separate right was claimed for Baldwin. He was made a party as receiver, and merely to note to whom the recovery, if obtained, would be payable. As to the reasons for a continuance grounded on the absence of the defendant, &c., evidently his Honor was a much better judge of them than we can be. And even if, in any case, we had the right to revise his discretion, it must certainly be one of plain and palpable error, to justify us in undertaking to do so. Nothing of that sort appears here.

3. The principal question is upon the motion of the defendant, that satisfaction of the judgment be entered on his paying into Court the amount of the judgment in the bills of the plaintiff, Bank. The Judge declined to allow it. In this we think the Judge erred.

At the close of the war it appeared that most, if not all, of the Banks of the Southern States, were unable to redeem their bills in lawful money, and that consequently they were depreciated, not only below their face value, but in some cases

below what might be paid on them if the assets of the Bank were faithfully applied to their redemption. This state of things offered a field for the Banks and their officers, who alone could know the extent of the assets and the actual value of the bills, to buy them up at depressed prices, while they were collecting the debts due to them in lawful money. Under these circumstances, it seemed to the Legislature a wise policy to allow the debtors of the Banks to set-off the bills of the Banks against their indebtedness.

In this view the acts of 22d of August, 1868, and of 17th March, 1869, (acts 1868–'9, ch. 77) and of 13th December, 1869, (acts of 1869–'70, ch. 4) were passed. The two first acts applied to Banks generally. The last, by which the right claimed by defendant in this case is given, is confined in its terms to Banks chartered by this State, and the plaintiff contends that it cannot by legitimate construction be extended to it. He also contends that the whole of this legislation, both as to domestic and foreign Banks, is unconstitutional, as impairing the obligation of contracts. Certainly if this last position be correct as respects foreign Banks, it will equally hold with respect to domestic ones. For the Legislature has no more right to impair the obligation of a contract made with one than the other class of Banks. But it does not seem to us that the legislation in question is open to this objection. The doctrine of set-off has long had a place in the law. And although, under the practice before the acts in question, a defendant could only plead as a set-off a debt of the plaintiff owing to him at the commencement of the action, yet this was not by reason of any unchangeable principle of justice, but arose out of the rules of pleading. For if a defendant, whose claim was rejected under his plea of set-off, could obtain a judgment on it in a separate action before payment of the judgment against him, the Court would set-off the two judgments and allow execution for the excess only. The law of set-off was a part of the law of the remedy, and consequently within the power of the Leg-

islature to change at its pleasure, by prescribing the time or stage of the plaintiff's action at which it should be available.

That is all that the Legislature has done. It does not deny to the plaintiff the full obligation of the contract to him; it only says to him you must also perform the contract you have made. *Mann* v. *Blount*, 65, N. C. 99. *Bank of Charlotte* v. *Hart*, at this term.

As to the application of the act of 1869 to foreign Banks suing in this State, corporations created in one country can sue in the Courts of another country by comity only. *Bank of U. S.* v. *Earle*, 13 Pet. 519. The Legislature may deny to a foreign corporation that right, or may impose conditions on its exercise.

It would be a strange policy for a State to allow to a foreign Bank, suing in its Courts, privileges denied to its own. We think that, by a proper construction of the act of 1869, all Banks suing a citizen of this State in the Courts of this State must be regarded in that suit as chartered by this State, for their charter and corporate existence is recognized by the law of this State for the purposes of the suit. The former acts include foreign Banks in their general terms. All three of them however are in *pari materia*, parts of the same general policy, and must receive a similar construction. Judgment below affirmed and on payment of the bills of the plaintiff into Court. Let satisfaction be entered in this Court.

PER CURIAM.                              Judgment accordingly.