JOHN G. BLOUNT, Commissioner of the Bank of Washington, *v.* R. C. WINDLEY.

The maker of a note due a bank has the right to tender in payment of such note, as equivalent to gold and silver coin, the bills issued by the bank.

A bank cannot, by assignment of its effects, choses in action, &c., deprive a maker of a note due the bank of his right to pay the same with the bills of the bank; nor can the bank, by any authority derived from the Legislature, deprive the maker of such right of payment of a note due the bank, in bills of the bank.

(*Bank of Charlotte* v. *Hart*, 67 N. C. Rep. 264; *Exchange Bank of Columbia* et al. v. *Tiddy, Ibid.* 169; and *Mann* v. *Blount*, 65 N. C. Rep. 99, cited and approved.)

CIVIL ACTION, determined by *Watts, J.,* at the Spring Term 1872, of the Superior Court for BEAUFORT county, upon the following case agreed.

At Fall Term, 1866, of the Court of Equity for Beaufort county, upon the petition of the stockholders of the Bank of Washington, there was a decree of that Court, vesting all the real and personal property and choses in action of the Bank of Washington in the plaintiff, as commissioner, pursuant to the act of the General Assembly, ratified March 12th, 1866, for the benefit of such of the creditors of said bank as proved their debts within twelve months. The notices and advertisements required by the Act were complied with.

At Fall Term, 1867, of Beaufort Superior Court, plaintiff

obtained judgment against one A. T. Reddett, and the defendant, who was his surety, on a note for $1,735.50, payable to the cashier of the bank for money borrowed, with interest from the 1st November, 1867, and for costs, and execution was duly issued thereon, returnable to Fall Term, 1868. Subsequent to the issuing of this execution, the defendant, Windley, obtained bills of the Bank of Washington sufficient to cover the debt, and tendered them to plaintiff in payment thereof, which were refused. He then deposited said bills with the clerk of the Superior Court of Beaufort county, who received them, not in payment of the judgment, but subject to the order of the Court in the case.

At Fall Term, 1868, there was a motion in the cause to set aside the judgment, which motion remained pending until Spring Term, 1872, and then on the hearing was refused.

At Spring Term, 1872, there was a motion on behalf of the defendant to have the bank bills of the Bank of Washington, theretofore deposited with the clerk of the Court, received in payment of the judgment against the defendant, and the same declared satisfied, which motion was allowed by his Honor, who directed the clerk of the Court to receive said bills of the Bank of Washington as a payment of the judgment against the defendant, and to enter satisfaction of the judgment of record.

From this order, the plaintiff appealed.

*Haywood*, for appellant.
*Phillips & Merrimon*, contra.

PEARSON, C. J. *Bank of Charlotte* v. *Hart*, et al. 67 N. C. Rep. 264, the right of the defendant to have " the bills of the bank" applied in payment of a judgment in favor of the bank, is conceded ; and the only question was, as to the allowance of interest upon the bills from the time at which

the defendant had demanded to have the bills received in satisfaction of the judgment; it is decided that interest should be allowed. *Exchange Bank of Columbia* and *C. H. Baldwin* v. *Tiddy,* 67 N. C. Rep. 169, the principal question was, as to the right of the defendant to have "the bills of the bank" applied in satisfaction of the judgment. It is decided, "on payment of the bills into Court, satisfaction of the judgment be entered of record." No notice is taken of the effect of making Baldwin a party plaintiff as receiver, and the case is made to turn on the point, that as against a bank, chartered in another State, suing citizens of this State in the courts of this State, the defendant is entitled to have the bills of such bank applied in satisfaction of the judgment. So between the bank and its debtors, the question may be considered to be settled. In our case, the action is in the name of Blount, who is the assignee of the bank, and the point made is, that the defendant has not the right to have the bills of the bank applied in payment as against the assignee. In *Mann* v. *Blount,* 65 N. C. Rep. 99, an opinion is intimated by the Court that the defendant is entitled to the same right as against the assignee, that he would have had against the bank, had the note not been assigned. But it was not necessary to decide the point, as the matter went off upon an objection to the mode of procedure, and although the subject was then discussed, we were willing to hear further argument, treating it as an open question.

The assignment of the note by the bank to Blount is not made by endorsement, as provided by the Statute of Ann, "in like manner as inland bills of exchange, according to the custom of merchants of England": Revised Code, chap. 13, sec. 1; but, as we will assume for the sake of the argument, by a general deed of assignment, conveying all of the effects, choses in action, &c., of the bank to Blount, in trust for the creditors of the bank, *pro rata,* who elect to take under the deed. So, the learning in respect to the legal ef-

fect of the endorsement of a bill of exchange, or promissory note, according to the custom of merchants in England, before maturity, or after maturity, has no application to our case; and we will not enter into a consideration of the point, whether the endorsee of a note, before maturity, made to a bank, has a right to compel payment in gold or silver coin, and is relieved from the right of the maker to pay the note in the bills of the bank, which right he certainly had, as against the bank; or whether the endorsee, after maturity, of a note made to a bank, has a right to compel payment in gold and silver coin, or is subject to the right of the maker to use the bills of the bank in discharge of the note, as a right which had attached at the date of the endorsement; for, in either case, if the maker has not the same right as against the endorsee, that he would have had against the bank, it results from the effect given to the endorsement, "by the custom of merchants in England," with which we are not now concerned.

Nor, will we enter into a consideration of the point, in respect to the law of set off; whether the defendant must hold the "mutual demand," at the time of the assignment, or at the commencement of the action, or at the time of plea pleaded, or at the trial; for, ours is not a question of set off, but a question as to the right of a bill holder to use the bills of the bank, as a legal tender, equivalent to gold and silver coin, *in satisfaction of a debt due to the bank.*

The neglect of advertance to those diversities is the cause, as it seems to us, of the obscurity and confusion in which the question is involved in many of the cases. See *Exchange Bank of Virginia, for Camp, Trustee,* v. *Knox,* 19 Grattan, 739; 3 Wendall's Rep. 13; 8 Watts & Serg. 311; 1 Ohio Rep. 381. It certainly is the main fallacy of the very labored argument of the plaintiff's counsel in this case.

Nor will we enter into a consideration of the point, how the question would have been had the payee of the note

been an individual or a corporation *other than a bank, chartered for the purpose of supplying a currency in the shape of bills of the bank, to circulate as the representative of money.* For here, the payee is such a bank.

The question will be considered in four points of view:

1st. Did the maker of the note have a right to tender *the bills of the bank* in payment, as equivalent to gold and silver coin, or had the bank a right to compel payment in gold or silver coin, and to refuse to accept its own bills in payment of debts due to it?

This is too plain for discussion. The object of incorporating the bank was to furnish *a currency,* and as a condition for the grant of this franchise, or exclusive privilege, the law "tacitly" annexed the condition, (using the words of Lord Coke,) that the bank would receive its own bills in payment of debts due to it.

So, when the note was made, there was this condition implied by law, *as a part of the contract,* just as forcible as if set out in the face of the note, "the bills of the bank will be accepted in satisfaction of this note, as equivalent to gold and silver coin"; and carrying out the idea, as if every ten dollar bill, had been stamped, "equal to $10, in gold, in payment of debts due to the bank." Assuming this to be so, it is said, "tender of money must be pleaded, and the money be brought into Court, which, of course, must be done before judgment."

Here we have another instance of the confusion of ideas by the introduction of irrelevant learning. The defendant does not propose to avail himself of a right common to every defendant, when there is a controversy as to the amount due, to tender money and bring it into Court. He takes the broad ground of a right as a part of the contract, to pay this debt in the bills of the bank, and that the bank has its mouth shut by estoppel, and by the maxim, "no one shall take advantage of his own wrong." So it can make no dif-

ference whether the bills of the bank, which are, as against the bank, to be treated as equivalent to gold and silver coin, are tendered before or after judgment. Surely a debtor can discharge his debt, by a tender of gold and silver coin, at any time before the sheriff sells under execution. As against the bank, the bills of the bank are to be treated as equivalent to gold and silver coin. At the common law, when execution had not issued within a year and a day, the plaintiff was required to issue a *sci. fa.*, to give the defendant a day in court, to show cause; if an execution issued within the year and a day, the defendant, in order to get a day in court, sued out a writ of *audita querela*, and in either case, as good cause why execution should not issue or should be superceded, and satisfaction be entered of record, it was enough to show, that he had tendered the amount of the judgment in gold and silver coin, or its equivalent. In *Exchange Bank of Columbia* v. *Tiddy*, the application of the bills of the bank was allowed at the time when the judgment was entered. In *Bank of Charlotte* v. *Hart*, the application was allowed after the judgment had been rendered. In neither case, was it suggested, that the act of 1869 violated the constitutional provision, as to "legal tender," for the plain reason that *the bills of the bank* are made a legal tender by the act of the parties, as a part of their contract, and as a necessary incident to an undertaking, to supply a circulation to pass as money. The legislation on the subject was treated as declaratory, and in affirmance of the right of the defendant to have the bills of the bank applied in satisfaction, and to provide a mode of procedure.

2. Did the bank, by its own act, have the power to deprive the maker of the note of this right, and by a general assignment of its effects, choses in action, &c., to the plaintiff, in trust for such of its creditors as should elect to claim under the deed, to put it in the power of the trustee, or assignee, or

commissioner, to compel the maker of the note to pay in
gold and silver coin, instead of the bills of the bank?  A
statement of the proposition would seem to be sufficient for
its solution, if the idea of the endorsement of negotiable
paper according to the law merchant, and the doctrine of
set off, which, as we have seen, has nothing to do with the
question, be kept out of view.  It takes two to make a bar-
gain, and it takes two to rescind it.  The bargain was, that
the bank would receive its bill in payment of the debt.
The defendant is ready to comply with his contract, and has
never agreed to forego this right.  Why shall he not use it
against the assignee, in the same way that he could have
used it against the bank, had there been no assignment?
That is the question.

We assume that the bank has executed a general deed of
assignment in trust for creditors, which is the most favora-
ble view for the plaintiff, and such we will suppose to be the
legal effect of the decree of the Court of Equity, set out in
the case, in connection with the act 12th March, 1866, un-
der which the bank went into liquidation.  Suppose, then,
that the bank had executed a general deed of assignment,
in trust for creditors, to be paid *pro rata,* what is the effect
of the assignment?  To vest in the plaintiff all of the rights
of the bank for the benefit of such creditors as may elect to
claim under the deed; but how can that effect or impair the
rights of bill holders, who did not concur in the arrange-
ment, or the rights of debtors of the bank, to pay debts due
to the bank, in its bills as equivalent to gold and silver
coin?  In other words, on what principle of law or equity
can the assignee or the creditors be put on higher ground
than the bank occupied in respect to the right of the
debtors of the bank to tender its bills, in satisfaction of debts
due to the bank?

The endorser of a negotiable instrument before maturity,
stands on higher ground than the payer, by the law mer-

chant, but that has no application to a deed of assignment in trust for creditors. A purchaser for valuable consideration without notice, who takes a deed from a trustee, passing the legal title, is not subject to the trust, and stands on higher ground than the trustee, by the rule in equity, " when equities are equal the legal title prevails;" but that doctrine has no application to a deed of trust for the benefit of creditors, for two reasons; 1st, The legal title in choses in action does not pass, so the rights and equities stand as before; 2d, Neither the trustee nor the creditors are purchasers for valuable consideration within the meaning of the rule. The trustee pays nothing. The creditors pay nothing, nor do they surrender any right; they merely concur in an arrangement, by which they hope to secure some portion of their debts. The idea of a " purchaser," who pays nothing in money, or in money's worth, is absurd. The fact is, that all that has heretofore been claimed, or conceded to assignees in trust for creditors, is, that the deeds of assignment should not be deemed and held to be voluntary and fraudulent under the statute, 13 Elizabeth, as against creditors. After much hesitation, in opposition to the ruling of the courts in England, it was held that the *bona fides* of the creditors, secured by the deed of trust, relieved it from the imputation of being voluntary and fraudulent, as against creditors; and in that sense the deed was to be treated as made for valuable consideration and not void as a fraudulent arrangement; but the notion that the trustee, or the creditors could occupy the ground of being purchasers for valuable consideration, without notice, entitled to stand on higher ground than the maker of the deed of trust is novel, and we should say is absurd, were we not forbidden by the respect due to the decisions of some of our sister States, cited on the argument. *Ingram* v. *Kirkpatrick*, 6 Ired. Eq. 463; *Wallenger* v. *Coutts*, 3 Minnesota 707.

By confounding the distinction between deeds, which will

not be treated as voluntary, and for that reason, fraudulent and void as against creditors, under 13th Elizabeth, and deeds to purchasers for valuable consideration, in fact paid, without notice of a trust, a plausible argument is made in support of the position, that the assignee or trustee, and the creditors claiming under the deed, are entitled to a higher position, than the bank could have occupied. Our opinion is, that the assignee and creditors stand "in the shoes of the bank." The position, that by the effect of the deed of assignment, the debt ceased to be a debt due to the bank to be satisfied by "the bills of the bank," and became a debt due to the creditors of the bank, exempt from that right, is a conclusion illogical and unsatisfactory.

3d. Could the bank by the aid and concurrence of the General Assembly, deprive the maker of this right, by a transfer of the note, going into liquidation, and surrendering its charter? "No State can impair the obligation of a contract." When this contract was made, a part of it was, that the maker had the right to pay the note in the bills of the bank; he has never forfeited that right. How, then, can the General Assembly and the bank, by any kind of combination and confederacy, alter the contract, and force the maker to pay in gold and silver coin, when he is ready, able and willing to pay in the bills of the bank. You say, he did not pay, when the note fell due; but he is willing to pay the interest, and has it ever before been heard of, that because a debtor does not pay at the day, that gives the General Assembly power to alter the contract and strike out one important part of it; even although the bank has been unfortunate and is compelled to go into liquidation, and is earnestly desirous to divide its funds, as far as they will go, among its billholders and its depositors, all being honest creditors. Can the misfortunes, or the shortcomings of the bank, put it in the power of the General Assembly to alter the contract of the defendant, and take from him "a vested

right"? If requested to consent to divide the loss with another class of creditors, he says, when I incurred the debt, it was a part of the contract, that I was to be at liberty to pay it, in the bills of the bank; you deposited your money solely on the faith you had in the bank, knowing that all of its debtors had a right to pay debts in its bills; at all events, I feel at liberty to stand upon my rights, under the contract, and the bank cannot by its own action or with the aid and concurrence of the General Assembly, alter the contract.

4th. Has the General Assembly concurred with the bank, in this attempt to deprive the defendant of his right to pay the debt in the bills of the bank? So far from doing so, the act of 1st March, 1866, and the ordinance of the Convention 22d June, 1866, both being before the bank made its' transfer, expressly reserved the right of the debtors of banks to pay in the bills of the bank; and the act 12th March, 1866, under which the Bank of Washington went into liquidation, must be construed, in reference to the act passed only two days before, as is declared and affirmed by the ordinance 23d June, 1866, with notice of which the bank made the transfer; and as is also declared and affirmed by the acts 12th March and 17th December, 1869, and 4th March, 1871, all of which declaratory acts show, that it was not the intention of the General Assembly to continue and co-operate with the bank, to aid it, in an attempt to deprive the defendant of his right to pay off his note in the bills of the bank; on the contrary, these latter acts are so strong, that the argument for the plaintiff is bound to get rid of them, by asserting that they are unconstitutional, as impairing rights acquired under the transfer of the bank.

No one can read the legislation upon the subject, without being convinced that the General Assembly, so far from intending to deprive the holders of bills of banks, of the right to use them in payment of debts due to the bank, there is a constant and earnest endeavor to preserve that right, and to

provide ways for its exercise, as well after as before judgment.

No error.

Justice Boyden dissents.

PER CURIAM.                                    Judgment affirmed:.